**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Natasha | Quadella | Deyo |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) First Name | | Middle Name | Last Name |

United States Bankruptcy Court for the: Eastern District of Virginia

Case number  20-33368-KLP
(If known)



# Official Form 427
# Cover Sheet for Reaffirmation Agreement                                    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**  Northwest Federal Credit Union
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed  $ 15,053.30

To be paid under the reaffirmation agreement  $ 15,053.30

$ 539.99 per month for 30 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed    5.51 %

Under the reaffirmation agreement    5.51 %  ☑ Fixed rate
☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes. Describe the collateral. 2016 Dodge Journey

Current market value  $ 11,400.00

**5. Does the creditor assert that the debt is nondischargeable?**
☐ No
☑ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J

6a. Combined monthly income from  $ 1,756.00
line 12 of Schedule I

6b. Monthly expenses from line 22c of  – $ 2,745.00
Schedule J

6c. Monthly payments on all  – $ 0
reaffirmed debts not listed on
Schedule J

6d. Scheduled net monthly income  $ -989
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the
number in brackets.

Income and expenses stated on the reaffirmation agreement

6e. Monthly income from all sources  $ 1,756.00
after payroll deductions

6f. Monthly expenses  – $ 2,745.00

6g. Monthly payments on all  – $ 0
reaffirmed debts not included in
monthly expenses

6h. Present net monthly income  $ -989
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the
number in brackets.

Debtor 1   Natasha Quadella Deyo                                    Case number (if known) 20-33368-KLP
           First Name   Middle Name   Last Name

7. Are the income amounts on lines 6a and 6e different?
   ☒ No
   ☐ Yes. Explain why they are different and complete line 10 _____

8. Are the expense amounts on lines 6b and 6f different?
   ☒ No
   ☐ Yes. Explain why they are different and complete line 10. _____

9. Is the net monthly income in line 6h less than 0?
   ☐ No
   ☒ Yes. A presumption of hardship arises (unless the creditor is a credit union).
          Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.
          Complete line 10.

          _Out of monthly income._

10. Debtor's certification about lines 7-9

    If any answer on lines 7-9 is Yes, the debtor must sign here.

    If all the answers on lines 7-9 are No, go to line 11.

    I certify that each explanation on lines 7-9 is true and correct.

    X _____                              X _____
    Natasha Deyo, Aug 24 2020, 03:19 EDT
    Signature of Debtor 1                                Signature of Debtor 2 (Spouse Only in a Joint Case)

11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?
    ☐ No
    ☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
           ☐ No
           ☒ Yes

## Part 2:  Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

X _Barbara Madden_                                       Date 08/11/2020
  Signature                                                   MM / DD / YYYY

Barbara Madden
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Official Form 427                    Cover Sheet for Reaffirmation Agreement                    page 2

Form 2400A (12/15)

> Check one.
> ☐ Presumption of Undue Hardship
> ☑ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
Eastern District of Virginia

In re Natasha Quadella Deyo ,    Case No. 20-33368-KLP
*Debtor*

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Northwest Federal Credit Union

☑ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: auto loan

*For example, auto loan*

B. *AMOUNT REAFFIRMED:*    $    15,053.30

> The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).
>
> *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is    5.5100 %.

> *See definition of "Annual Percentage Rate" in Part V, Section C below.*
>
> This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                                                                          Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐   $_____ per month for _____ months starting on_____.

☑   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.
   The amount of $539.99 is due on the 1st day of each Month. Due date as of 08-11-2020: 09-01-2020

E. Describe the collateral, if any, securing the debt:

   Description:              2016 Dodge Journey
   Current Market Value      $                    11,400.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

   ☐ Yes. What was the purchase price for the collateral?         $_____

   ☑ No. What was the amount of the original loan?                $ 29,031.02

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|                                      | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $      15,053.30 | $      15,053.30 |
| Annual Percentage Rate               | 5.5100 %         | 5.5100 %         |
| Monthly Payment                      | $      539.99    | $      539.99    |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.   ☑ Yes    ☐ No

B. Is the creditor a credit union?

   Check one.   ☑ Yes    ☐ No

Form 2400A, Reaffirmation Documents                                                                                                    Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                $ 1756

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                            $ 2,745

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)  $ -989

   d. Amount of monthly payment required for this reaffirmed debt        $ 539.99

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

   Out of monthly income.

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

 ☑ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents                                                                                                  Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

    (1)    I agree to reaffirm the debt described above.

    (2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    (3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    (4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

    (5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date __Aug 24, 2020__        Signature __Natasha Deyo (Aug 24, 2020 10:19 EDT)__
                                                                       *Debtor*

Date _____        Signature _____
                                                         *Joint Debtor, if any*

### Reaffirmation Agreement Terms Accepted by Creditor:

Creditor __Northwest Federal Credit Union__        __200 Spring Street, Herndon VA 20170__
              *Print Name*                      *Address*

__Barbara Madden__        __Barbara Madden__        __8/28/2020__
  *Print Name of Representative*            *Signature*            *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[☒] A presumption of undue hardship has been established with respect to this agreement. ~~In my opinion, however, the debtor is able to make the required payment.~~

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date __8/24/20__ Signature of Debtor's Attorney _____

              Print Name of Debtor's Attorney __Samos Kane__

Form 2400A, Reaffirmation Documents                                                                                                Page 5

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

Form 2400A, Reaffirmation Documents                                                                                    Page 6

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

      i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

Form 2400A, Reaffirmation Documents                                                                                                  Page 7

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Northwest Federal Credit Union

## Lien and Title Information

| | |
|---|---|
| ELT Lien ID | FK93NFCELTM0 |
| Lienholder | NORTHWEST FEDERAL CREDIT UNION |
| Lienholder Address | PO BOX 1229 |
| | HERNDON, VA 20172 |
| Lien Release Date | |

| | | | |
|---|---|---|---|
| VIN | 3C4PDCBB7GT148002 | Issuance Date | 2/3/2016 |
| Title Number | 73554799 | Received Date | 2/4/2016 |
| Title State | VA | ELT/Paper | ELECTRONIC |
| Year | 2016 | Odometer Reading | |
| Make | DODG | Branding | |
| Model | | | |
| Owner 1 | BARBARA N WOOLFOLK | | |
| Owner 2 | NATASHA QUADELLA DEYO | | |
| Owner Address | 1011 HERITAGE PL APT 103 | | |
| | FREDERICKSBURG, VA 224012812 | | |

Printed: Monday, August 10, 2020 6:07:02 AM PST

**NW NORTHWEST FEDERAL CREDIT UNION**
200 Spring Street
Herndon, VA 20170
(703) 709-8900
(800) 336-3384

**CLOSED-END NOTE, DISCLOSURE, LOAN AND SECURITY AGREEMENT**

| DATE OF LOAN | LOAN MATURITY DATE | LOAN OFFICER |
|---|---|---|
| 12/1/2017 | 2/1/2023 | Patricia D'Souza |

**BORROWER**
NATASHA Q DEYO

1011 HERITAGE PL APT 103
FREDERICKSBURG, VA 22401-2812

| LOAN NUMBER | BORROWER'S ACCOUNT NUMBER |
|---|---|
| 1378516 | XXX41278 |

BORROWER'S DATE OF BIRTH
XX/XX/1973

**CO-BORROWER**

CO-BORROWER'S DATE OF BIRTH

**CO-BORROWER**

CO-BORROWER'S DATE OF BIRTH

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost you. | Amount Financed: The amount of credit provided to you or on your behalf. | Total of Payments: The amount you will have paid after you have made all payments as scheduled. | Total Sale Price: Total cost of your purchase on credit, including your down payment of $ |
|---|---|---|---|---|
| 5.510 % | $ 4,396.08    e | $ 29,031.02 | $ 33,427.10    e | $ |

☒ Fixed Rate
☐ Variable Rate: This is a Variable rate share secured loan, the Annual Percentage Rate may increase or decrease during the term of this transaction if the share rate increases or decreases. Your initial rate will be the share rate plus a margin of 2.75% and will vary thereafter as described herein. An increase or decrease will take effect on the first day of each month following a change in the share rate. The interest rate will not increase above 18% or fall below 2.75%. Any increase will take the form of higher payment amounts. EXAMPLE: If your loan was $10,000 at 12% for 60 months and the rate increased to 14% after 3 years, your monthly payment would increase by $4.42.

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 61 | $ 539.99 | MONTHLY BEGINNING 1/1/2018 |
| 1 | $ 538.95 | ENDING 2/1/2023 |

☐ No payments for the first _____ days; Balloon Payment: There will be no payments due on your loan for _____ days. Interest will still accrue during this time. You must pay the entire amount of principal and accrued interest in one lump sum balloon payment as indicated in the payment schedule above.

Security: You are giving a security interest in your shares and deposits in the credit union, as well as the collateral described below. Collateral for other loans with us will also secure this loan, except for your home and household goods.

| Late Charges: You will be charged 5% of the monthly payment amount or $30.00, whichever is greater for each month the loan is 16 days or more delinquent. | Required Deposit Balance: The Annual Percentage Rate does not take into account your required deposit balance. | Property Insurance: You may obtain property insurance from anyone you want that is acceptable to the credit union. If you do not obtain property insurance the credit union will provide a forced placed policy at the borrower's expense. |
|---|---|---|
| Prepayment: If you pay off early, you will not have to pay a penalty. | | See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. |
| "e" means estimate. | | |

| ITEMIZATION OF AMOUNT FINANCED OF | $ 29,031.02 | Amount Paid to Others on Your Behalf (Describe) | | | |
|---|---|---|---|---|---|
| AMOUNT GIVEN TO YOU DIRECTLY | $ 0.00 | GAP To: (a portion may be retained by us) $ 0.00 | NWFCU $ 29,031.02 | $ | $ |
| AMOUNT PAID ON YOUR ACCOUNT | $ 0.00 | | | | |
| PREPAID FINANCE CHARGE | $ 0.00 | | | | |

**SECURITY INFORMATION**

| MOTOR VEHICLES: | YEAR | MAKE | MODEL/BODY TYPE | SERIAL NUMBER |
|---|---|---|---|---|
| | 2016 | DODGE | JOURNEY/UTILITY 4D SXT 2WD I4 | 3C4PDCBB7GT148002 |

| SHARES PLEDGED: | ACCOUNT NUMBER | AMOUNT $ | ACCOUNT NUMBER | AMOUNT $ |
|---|---|---|---|---|

| OTHER COLLATERAL: | |
|---|---|

**LOAN SIGNATURES**

You agree that the terms and conditions in the disclosure statement and the loan and security agreements attached hereto shall apply to this loan. If there is more than one borrower, you agree that all the conditions of the loan and security agreements governing this loan shall apply to both jointly and severally. You acknowledge that you have received a copy of the loan and security agreements and disclosure statement ("Note"). If you purchase optional loan products in connection with this loan, you understand that a portion of the premium or fee you pay will be retained by the credit union (or paid back to the credit union by the service provider) as compensation for making these services available to you. You also acknowledge receipt of the product application(s), disclosures, and contract(s) regarding the product(s).

Negative Information Notice: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.
CAUTION- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| BORROWER'S SIGNATURE DocuSigned by: X natasha Deyo | DATE 12/1/2017 | WITNESS X | DATE |
|---|---|---|---|
| ☐ CO-BORROWER ☐ *OTHER OWNER ☐ **GUARANTOR X | DATE | WITNESS X | DATE |
| ☐ CO-BORROWER ☐ *OTHER OWNER ☐ **GUARANTOR X | DATE | WITNESS X | DATE |

*OTHER OWNER: Any person who has a property interest (other than as a renter or lessor) in the above described collateral signs here. The other owner, unless also a co-borrower, is not obligated to pay the debt, but understands that the credit union has a security interest in the collateral as explained in the Security Agreement. **GUARANTOR: Upon default, the credit union may seek immediate payment from the guarantor and from any and all sums due on the loan, including all reasonable costs and fees provided under the loan and security agreements, as permitted by law. The guarantor waives all notice to which he or she would otherwise be entitled by law.

**THIS DOCUMENT OR A COPY OF THIS DOCUMENT MAY BE FILED AS A FINANCING STATEMENT.**

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| NATASHA Q DEYO | 1378516 | XXX41278 | 12/1/2017 |

### IMPORTANT DISCLOSURES FOR ACTIVE MEMBERS OF THE MILITARY AND THEIR DEPENDENTS:

The following applies if at the time of this loan you are a member of the military or a dependent (as those terms are defined in the Military Lending Act, 10 U.S.C. 987 and its implementing regulations), and: (a) your loan is unsecured or secured by personal property or a vehicle that you did not purchase with the proceeds of the loan; or (b) this loan is made for the purchase of a vehicle or personal property, and you also receive additional "cash out" financing (e.g., to pay off negative equity on a trade-in or you otherwise receive additional cash).

1. **NOTICE:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums or debt protection fees; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). To receive this notice verbally, please call 844-703-4652.

2. This loan or advance will not be secured by a consensual lien on shares or deposits in any of your accounts. The Credit Union, however, does not waive any statutory share lien that may apply to your loan. An account will not serve as security unless you specifically agree as reflected in the "Security Information" section.

3. Any reference to cross-collateralization shall not apply to this loan or advance.

4. This loan or advance is not subject to mandatory arbitration and therefore any reference to mandatory arbitration shall not apply to this loan or advance.

5. If you are a Louisiana resident, any Louisiana-specific provisions contained in the Security Agreement do not apply to this loan.

6. Any waiver under this Lending Agreement of applicable state and federal rights shall not apply to your loan.

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

## LOAN AGREEMENT

**Payments/Finance Charges:** For value received, I promise to pay, at your office, all amounts due. All payments shall be made pursuant to the disclosure statement on page 1 of this document. I understand that the finance charge and total of payments shown on page 1 of this document are based on the assumption that all installment payments will be made on the scheduled due dates. If I fail to pay any installment by the time it is due, I will pay additional interest on the overdue amount and my loan may not be paid in full at the end of the term. In such case, any remaining balance will be due in full immediately.

**Allocation of Payments and Additional Payments:** Payments and credits shall be applied in the following order: any amounts past due; accrued interest or finance charges; any fees or charges owing, including any insurance premiums; outstanding principal. Payments made in addition to regularly scheduled payments shall be applied in the same order. Even when payments are made ahead of the scheduled due date causing the loan to be paid ahead, interest or finance charges continue to accrue daily on the outstanding balance.

**Late Charges:** If I make a late payment, I agree to pay a late charge if one is disclosed on page 1 of this document.

**Borrower Responsibility:** I promise to notify you of any change in my name, address or employment. I promise not to apply for a loan if I know there is a reasonable probability that I will be unable to repay my obligation according to the terms of the credit extension. I promise to inform you of any new information which relates to my ability to repay my obligation. I promise not to submit false or inaccurate information or willfully conceal information regarding my creditworthiness, credit standing, or credit capacity.

**Default:** *The following provision applies to borrowers in Idaho, Kansas, and Maine:* I will be in default if (1) I do not make a payment of the required amount when due; or (2) you believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

*The following provision applies to borrowers in Wisconsin:* I shall be in default under this Agreement if any of the following occur: (a) If an amount exceeding one (1) full payment due under this Agreement is more than ten (10) days late or if the first or last payment due under this Agreement is more than forty (40) days late; OR (b) I breach any term or condition of this Agreement, which breach materially impairs my ability to pay amounts when due or materially impairs the condition, value, or protection of your rights to or in any collateral securing this transaction.

*The following provision applies to all other borrowers:* I shall be considered in default if any of the following occur: (1) If I break any promise made under this Loan Agreement or under the Security Agreement; or (2) if I do not use the money you loaned me for the purpose stated in my application; or (3) if you should, in good faith, believe that prospect of payment, performance or realization of the collateral, if any, is impaired; or (4) if I die; or (5) if I file a petition in bankruptcy, insolvency, or receivership or am put involuntarily into such proceedings; or (6) if the collateral, if any, given as security for this loan is lost, damaged or destroyed, or if it is levied against, attached, garnished, or seized for any reason under any authority; or (7) if I do not pay on time any of my current or future debts to you; or (8) if anyone is in default of any security agreement given in connection with any loan under this Note; or (9) If I make any false or misleading statements in any credit application or update of credit information; or (10) I am in default of any other loan or security agreement I have with the Credit Union; or (11) I use the Note for any illegal purpose or transaction as determined by applicable law; or (12) if I fail to execute and return to you any and all documentation required for this loan. If I default, you may, at your option, declare this loan immediately due and payable, and I must immediately pay to you at that time the total unpaid balance, as well as the Finance Charge to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees.

**Costs of Collection:** I shall pay all costs incurred by you in collecting any amount I owe or in enforcing or protecting your rights. Costs of collection include, but are not limited to, collection agency fees, repossession fees, appraisals, environmental site assessments, and casualty insurance. *The following applies to all borrowers except Wisconsin borrowers:* Costs of collection also include reasonable attorney's fees for any action taken by an attorney who is not your salaried employee in order to collect this loan or preserve or protect your rights and remedies, including, without limitation, pre- suit demands for payment, pre-suit mediation or settlement negotiations, investigation and assessment of your rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non- bankruptcy suits and/or administrative actions, and appeals. For Alabama borrowers: attorney's fees after default shall not exceed 15% of the unpaid debt, or such higher amount as a court may allow. For Georgia borrowers: attorney's fees shall not exceed 15% of principal and accrued interest, or such higher amount as a court may allow.

**Perfection of Security Interest; Increase in Rate; Fee; Default:** If borrower fails to protect your lien, you may take the necessary steps to do so and charge borrower a filing fee. This fee will be in the amount charged by the state and will be added to the loan balance. If Borrower does not provide the title or other required documentation to the collateral within 90 days of the loan date, or the Credit Union is otherwise unable to perfect its lien on the collateral pledged for the loan, the ANNUAL PERCENTAGE RATE for that loan shall increase to 18%.

Borrower's minimum monthly payment shall also increase accordingly. Credit Union may also, at its option, consider the loan to be in default and can call the loan immediately due and payable, in which case Borrower must pay the entire amount due in one lump sum. The loan while in default will bear interest at the highest rate allowed by law. Credit Union may waive or delay its right to declare default or to raise the rate at any time without losing those rights.

**Action Upon Default:** *The following provision applies to borrowers in Colorado, District of Columbia, Kansas, Maine, Massachusetts, Missouri, Nebraska, and West Virginia:* Once I have defaulted, and after the expiration of any right I may have under applicable state law to cure my default, you can demand immediate payment of the entire unpaid balance of the loan without giving me advance notice. The principal balance in default shall bear interest at the contract rate, or a default rate if one has been disclosed to me, or another rate if required by applicable law.

*The following provisions applies to borrowers in Wisconsin:*

*Right to Cure Default:* If I am in default under this Agreement, you must give a notice of default to me pursuant to Wisconsin Statutes sec. 425.104 425.105. I shall have fifteen (15) calendar days from the date the notice is mailed to me to cure the default. In the event of an uncured default, you shall have all the rights and remedies for default provided under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral. You may waive any default without waiving any other subsequent or prior default by me.

*No Right To Cure:* Pursuant to Wis. Stat. Sec. 425.105(3), I shall not have the right to cure a default if the following occur twice during the preceding twelve (12) months: (a) I was in default on the closed-end note; (b) You gave me notice of the right to cure such previous default in accordance with Wis.Stat.Sec. 425.104; and (c) I cured the previous default.

Nothing in this Agreement shall be construed to restrict your ability to exercise your rights under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral.

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| NATASHA Q DEYO | 1378516 | XXX41278 | 12/1/2017 |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

*The following provision applies to borrowers in all other states:* Once I have defaulted, you may, at your option, declare all amounts under the Note immediately due and payable, and I must immediately pay to you at that time the total unpaid balance, as well as the Finance Charge to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees. The principal balance in default shall bear interest at the contract rate.

**Membership Privileges:** Upon default the Credit Union may revoke any and all membership privileges previously extended to the Borrower (except the right to vote and to maintain a share savings account), without prior notice to the Borrower.

**Delay In Enforcement:** You may delay enforcing any of your rights under this agreement without losing them.

**Irregular Payments:** You may accept late payments or partial payments, even though marked "payment in full," without losing any of your rights under this agreement.

**Co-borrowers:** If I am signing this agreement as a co-borrower, I agree to be equally responsible with the borrower, but you may sue either or both of us. You do not have to notify me that this agreement has not been paid. You may extend the terms of payment and release any security without notifying or releasing me from responsibility on this agreement.

**Governing Law:** These agreements shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia. *If I have entered into a mandatory arbitration agreement in connection with this loan:* If any provisions within this Agreement pertaining to jurisdiction and venue are inconsistent with the arbitration agreement, the arbitration agreement will govern.

**Change in Terms:** The terms of this Closed-end Note, Disclosure, Loan & Security Agreement, including any fees disclosed, are subject to change without prior notice, subject to applicable law.

---

**Contractual Pledge of Shares:** I pledge all my shares and deposits in the credit union, including future additions, as security for this loan. In case I default, you may apply these shares and deposits to the payment of all sums due at the time of default, including costs of collection and reasonable attorney's fees. No lien or right to impress a lien on shares and deposits shall apply to any of my shares which may be held in an "Individual Retirement Account" or "Keogh Plan."

---

**State Notices:**

*NOTICES TO WISCONSIN BORROWERS:* No provision of a marital property agreement, a unilateral agreement under Wis. Stat. Section 766.59, or a court decree under Wis.Stat. 766.70 adversely affects the interest of the Credit Union unless prior to the time the credit is extended, the Credit Union is furnished with a copy of the agreement or statement, or has actual knowledge of the adverse provision when the obligation to the Credit Union is incurred.

*NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, THE BORROWER MAY HAVE TO PAY THE DIFFERENCE.*

*NOTICE TO UTAH BORROWERS:* This written agreement is a final expression of the agreement between me and the Credit Union. This written agreement may not be contradicted by evidence of any oral agreement.

*NOTICE FOR ARIZONA OWNERS OF PROPERTY:* It is unlawful for a borrower to fail to return a motor vehicle that is subject to a security interest within thirty days after I have received notice of default. The notice will be mailed to the address I provided on this document unless I have given the Credit Union a new address. It is my responsibility to notify the Credit Union if my address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

*NOTICE TO CALIFORNIA RESIDENTS:* By signing this Note, I specifically agree that the Credit Union may access the records of the California Department of Motor Vehicles *from time to time to obtain my current mailing address, and by so agreeing, I am* specifically waiving my rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

*NOTICE TO TEXAS BORROWERS- INSURANCE REQUIRED:* I am required to: (i) keep the collateral insured against damage in the amount of the loan or another amount if you so specify; (ii) purchase this insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and (iii) name you as the person to be paid under the policy in the event of a loss. I must also provide you a copy of the policy and proof of the payment of premiums if you so request. If I fail to meet any of these requirements, you may obtain collateral protection insurance on my behalf at my expense.

*For Missouri Residents:* Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.

To protect me (borrower) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

*For Vermont Residents:* NOTICE TO CO-BORROWER: MY SIGNATURE ON THIS LOAN MEANS THAT I AM EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE CREDIT UNION HAS A LEGAL RIGHT TO COLLECT FROM ME.

*OHIO RESIDENTS ONLY:* The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

*WASHINGTON AND OREGON RESIDENTS ONLY:*
WARNING
UNLESS I PROVIDE YOU WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY YOUR LOAN AGREEMENT, YOU MAY PURCHASE INSURANCE AT MY EXPENSE TO PROTECT YOUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT MY INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE YOU PURCHASE MAY NOT PAY ANY CLAIM I MAKE OR ANY CLAIM MADE AGAINST ME. I MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT I HAVE OBTAINED PROPER COVERAGE ELSEWHERE. I AM RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY YOU. THE COST OF THIS INSURANCE MAY BE ADDED TO MY LOAN BALANCE. IF THE COST IS IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE MY PRIOR COVERAGE LAPSED OR THE DATE I FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE YOU PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE I CAN OBTAIN ON MY OWN AND MAY NOT SATISFY WASHINGTON'S OR OREGON'S MANDATORY LIABILITY INSURANCE LAWS.

**SECURITY AGREEMENT**

**Security Interest; PLEDGE OF SHARES; Statutory Lien; Set-off; Administrative Freeze:** To secure the payment of this loan and all expenditures incurred by the credit union in connection with this loan: (a) **I grant the Credit Union a security interest** in the property described on Page 1 of this document ("Collateral"). The security interest includes all increases, substitutions and additions to the secured property, proceeds from any insurance on the secured property and all earnings received from the secured property. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which I buy within 10 days of the loan or any extensions, renewals or refinancing of the loan. If the value of the property declines, I promise to give you more security if asked to do so. I also agree to abide by the terms of the Security Agreement. (b) **I GRANT AND PLEDGE TO YOU A CONSENSUAL LIEN ON ALL SUMS ON DEPOSIT** to secure my obligations to the credit union pursuant to applicable state law. "All sums on deposit" and "shares" for purposes of this pledge means all deposits in any share savings, checking, Premium Savings, club, certificate, P.O.D., revocable trust or custodial accounts(s), whether jointly or individually held, that you have on deposit now or in the future, all of which are deemed "general deposits" for the purpose of this pledge. My pledge does not include any IRA, Keogh, tax escrow, irrevocable trust or fiduciary account in which I do not have vested ownership interest. (c) **I acknowledge and agree to impressment of the Credit Union's statutory lien rights** under the Federal Credit Union Act and/or applicable state law as of the date of my loan, which gives you the right to apply the sums in my account(s), to satisfy any obligations I owe to the credit union, regardless of contributions at the time of default, and without further notice to me or any owner of the account(s). (d) **I acknowledge and agree to your "common law" right to set off** under applicable state law which authorizes you to apply the funds in any joint or individual account to any obligations owed to you if I default or fail to pay or satisfy any obligation to you without any legal process, court proceeding or any notice to any owner of the account(s) affected hereunder or otherwise under this Agreement. (e) **I specifically agree that you have a right to place an administrative freeze on any of my joint or individual account(s) and that such action shall not violate 11 USC 362 or other applicable law.**

**Multiple Rights; Cumulative Remedies:** I understand and agree that the Credit Union has multiple rights as enumerated above and that the remedies are cumulative. Nothing herein shall limit or restrict the remedies available to you following any event of default under the terms of my loan documents.

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| NATASHA Q DEYO | 1378516 | XXX41278 | 12/1/2017 |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

**Cross-collateralization:** Property given as security for this loan or for any other loan Borrower has with the credit union will secure all amounts Borrower owes the credit union now and in the future. However, property securing another debt will not secure this loan if such property is Borrower's principal residence (unless the proper rescission notices are given and any other legal requirements are satisfied), or are non-purchase money household goods.

**Release of Lien:** You will not release any lien on any collateral under this Note if I am delinquent on, or in default on, any other loan I have with you. For example, if I am in default on a line of credit, you will not release your lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**Transfer of Collateral:** I will not change the location of, sell or transfer the collateral unless I have your prior written consent.

**Good Title:** I warrant that I have good title to the collateral, free of all security interests except that given to the credit union and except for any interest of a non-co-borrower owner of the collateral who has signed the agreement in the indicated place. Upon payment in full, the Credit Union may release the Certificate of Title or other proof of ownership to any individual listed as owner of collateral on said document.

**Maintenance of Collateral:** I will pay all taxes, assessments, and liens against or attached to the property described and further agree to keep the property in good condition, housed in a suitable shelter. I agree to execute financing statements and security agreement amendments at your request and will defend the property against adverse third party claims.

**Additional Security:** Should you feel at any time that the security presented has diminished in value, or for any reason feel that additional security is required, I agree to assign to you within ten (10) days whatever additional security you feel is necessary to protect yourself against possible loss.

**Actions Upon Default:** If a default as defined in the Loan Agreement should occur, you, or a third party designated by you, have the authority, upon such default, to repossess and sell the collateral in a lawful manner. This includes authority to take possession of any personal property contained in the collateral. In such cases, you or your authorized representatives may, at your option, enter the premises where the collateral is kept and take possession, subject to applicable laws. You have the right to render the property pledged as collateral unusable and may dispose of the collateral on the premises where the collateral is kept. If you decide to sell the collateral at a public sale, private sale or otherwise dispose of the collateral, you will provide reasonable notice if required by law and will otherwise comply with applicable state law. If you sell or otherwise dispose of the collateral you may collect from me reasonable expenses incurred in the retaking, holding and preparing the collateral for and arranging the sale of the collateral. You may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the property. Unless I default, I may keep possession of the property (collateral) described and use it in any lawful manner consistent with this agreement or with the insurance policy on the collateral. I understand that you have certain rights and legal remedies available to you under the Uniform Commercial Code and other applicable laws, and that you may use these rights to enforce payment if I default. In the event of default, I will at your request assemble the property (collateral) and make it available to you at a place of your choosing. If you decide to waive this default, it will not constitute waiver of any other subsequent defaults.

**Attorney-In-Fact:** You are hereby appointed as my Attorney-in-Fact to perform any acts which you feel are necessary to protect the collateral and the security interest which this agreement creates.

**Joint Borrowers:** If there is more than one borrower, our obligations under this agreement are joint and several, each being equally responsible to fulfill the terms of this agreement.

**Others Bound:** This security agreement not only binds me, but my executors, administrators, heirs, and assigns.

**Further Assurances:** I agree to execute any further documents, and to take any further actions, reasonably requested by Credit Union in order to evidence or perfect the security interests granted herein or to effectuate the rights granted to Credit Union.

**Governing Law:** This Security Agreement is being executed and delivered in, and is intended to be performed in, the Commonwealth of Virginia and shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, except to the extent that the Uniform Commercial Code provides for the application of the law of another state.

**Additional Advances:** Any additional advances made by you for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon or any other advance necessary to perfect or protect your security interest shall also be secured by this agreement. Such amounts shall be added to my loan balance and my minimum payment due shall be increased or my loan term extended accordingly.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and I am in default, you may seize and sell the motor vehicle without demand for payment or advance notice to me. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, I hereby confess judgment in your favor for all amounts secured by the Note, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts under the Note. You may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, I hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. I further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9- 508, to the extent applicable.

---

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE - PLEASE READ CAREFULLY**

(a) My requirement to maintain property insurance. I am required to carry insurance to protect my interest and your interest in the collateral securing this loan. The insurance:

- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this loan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as you might otherwise inform me that you require.
- Must have a maximum deductible as set forth by you.
- Must be maintained in force for as long as the loan is outstanding.
- Must name you as loss payee. You must receive the loss payee endorsement within 30 days of my loan date.

These requirements are solely in your discretion and you may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of my choice that is acceptable to you.

(b) Lender-placed property insurance. Please read carefully:

- If I fail to maintain insurance satisfying the requirements set forth above, or if I fail to provide you proof of such coverage, you may, but do not have to, obtain insurance to protect your interest (not mine) in the property.
- The total cost of lender-placed insurance will be added to the loan balance. The total cost of this insurance includes, but is not limited to, the premium, any administrative costs you incur, any commissions that may be earned, and other reasonable expenses related to my failure to maintain insurance. This cost will be paid by me either on demand, or by increasing my periodic payment, or by extending the loan term.
- Whether you obtain insurance, and the amount and types of coverage that you may obtain, is solely in your discretion. You may obtain this insurance from anyone you want, including an affiliate of yours, and such affiliate may earn a commission on the coverage.
- The insurance placed by you is without benefit to me personally, and is primarily for your protection. It may not adequately protect my interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- Coverage obtained by you may be considerably more expensive than coverage I could obtain on my own and may be different than previous policies I may have had or policies that I may prefer.
- Any insurance placed by you will be effective as of the date my policy lapsed or, if I never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to me with respect to any agreements between you and your insurer or its agent.

(c) How to remove lender-placed property insurance. I may have the lender-placed coverage cancelled at any time by providing evidence to you that I have purchased insurance coverage satisfying the requirements set forth above. If I do so, I will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and my loan balance will be adjusted accordingly.

(d) Other. I assign you the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums I owe, and I direct any insurer to pay those proceeds directly to you. I further authorize you or your representative to obtain the necessary information for verification of adequate coverage. You, or your affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by you.

(e) Default. If I fail to maintain insurance as set forth above, I will be in default of my loan. You may either place your own insurance on the collateral as explained above, or you can declare me in default and take all remedies set forth in my loan or security agreement or available to you under applicable law, including calling the loan immediately due.

6100 7-2014

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| NATASHA Q DEYO | 1378516 | XXX41278 | 12/1/2017 |

## APPLICATION AND DISCLOSURES for DEBT PROTECTION PLAN

**This Product is Optional.** Your purchase of the Debt Protection Plan ("Plan") is optional. Whether or not you purchase this protection will not affect your application for credit or the terms of any existing credit agreement you have with the Credit Union. You may cancel the Program at any time. See the Program Agreement for an explanation of how the Program may be terminated.

| I ELECT: (Check only one box) | Cost: | |
|---|---|---|
| | **Open-end Loans:** per $1,000 of monthly outstanding balance | **Closed-end Loans:** Estimated Total Fee**: |
| **PLAN 1:** Plan #602657<br>**Death:** Cancels loan balance*<br>**Disability:** Cancels up to 12 Payments*<br>**Involuntary Unemployment:** Cancels up to 6 Payments* | ☐ Single: $2.68<br>☐ Joint: $4.82 | ☐ Single: $_____<br>☐ Joint: $_____ |
| **PLAN 2:** Plan #602658<br>**Death:** Cancels loan balance*<br>**Disability:** Cancels up to 12 Payments* | ☐ Single: $1.28<br>☐ Joint: $2.17 | ☐ Single: $_____<br>☐ Joint: $_____ |
| **PLAN 3:** Plan #602659<br>**Disability:** Cancels up to 12 Payments*<br>**Involuntary Unemployment:** Cancels up to 6 Payments * | ☐ Single: $1.83<br>☐ Joint: $3.47 | ☐ Single: $_____<br>☐ Joint: $_____ |
| **PLAN 4:** Plan #602660<br>**Death:** Cancels loan balance* | ☐ Single: $0.85<br>☐ Joint: $1.35 | ☐ Single: $_____<br>☐ Joint: $_____ |

*Benefit Maximums: Death Protection cancels a maximum of $75,000.
Cancellations listed are per occurrence.
Disability and Involuntary Unemployment cancellations are limited to $1,000 per month, and $15,000 over the term of the loan, per each Protected Event and per each protected Borrower.

** The Total Fee for a closed-end advance under your Consumer Lending Plan will be disclosed to you at the time you take your closed-end advance.

☒ No, I do not wish to apply for the voluntary Payment Protection Plan at this time. _ND_ (Borrower 1 initials) _____ (Borrower 2 initials)

**Application Eligibility:**
To be eligible to apply, I must meet the following conditions. By signing this Application, I am stating that: (1) I am under age 70; (2) *if applying for Disability or Involuntary Unemployment protection:* I am presently working twenty-four (24) or more hours per week; (3) *If applying for Involuntary Unemployment protection:* I am not self-employed, and I have not received unemployment benefits within the past 2 years.

### BORROWER'S SIGNATURE

I acknowledge and agree that: (a) I meet the eligibility requirements listed above. If it is discovered that I do not meet the eligibility requirements above, my participation in the Plan will be terminated, I will receive a refund of any fees paid, and an otherwise valid claim will be denied; (b) I have received the disclosures herein and have thoroughly read the *Debt Protection Program Agreement ("Agreement")*, and agree to abide by the terms of the Agreement; (c) I authorize the Plan fees to be added to my loan each month; and (d) I understand that I may not be eligible for all benefits contained in the Plan. This document is hereby incorporated into Borrower's loan documentation as if fully set forth therein. **There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under the Program. See the Program Agreement for details.**

| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE (If applying for Joint Protection) | DATE |
|---|---|---|---|
| X _Natasha Deyo_ (DocuSigned)<br>F924FB3D009A437... | 12/1/2017 | X | |

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| NATASHA Q DEYO | 1378516 | XXX41278 | 12/1/2017 |

## PROGRAM AGREEMENT for DEBT PROTECTION PLAN

*As used in this Debt Protection Plan Program Agreement ("Agreement"), "You", "Your" or "Borrower" means the person(s) who are obligated to repay a loan to us who have purchased debt protection under this Agreement. "We", "Our", "Us" means, Northwest Federal Credit Union, 200 Spring Street, Herndon, VA 20170 "Plan Administrator" means Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, Minnesota, 55101, or one of its affiliates, or a contracted third party.*

This Agreement amends your loan or credit agreement. By enrolling in this Debt Protection Plan ("Plan"), you agree to abide by the terms of this Agreement. The Debt Protection Application is a part of this Agreement and is hereby incorporated as if fully set forth herein.

### DEFINITIONS

**Effective Date** means that date on which your Plan becomes effective, which is: (1) in the case of a closed-end loan, the date you enroll in, and your eligibility is approved for, the Plan; or (2) in the case of a line of credit, the later of the date you enroll in, and your eligibility is approved for, the Plan or the date of your first advance under the line of credit.

**Working twenty-four (24) or more hours per week:** This term means that you are actively working for income for twenty-four (24) hours or more per week. Working means actually performing your job duties and not off of work due to leave of absence; layoff; routine or seasonal work interruption; or any other reason. Outstanding Balance and Payment: "Outstanding Balance" means the outstanding loan balance as of the date a Protected Event occurs. "Payment" means the minimum monthly loan payment scheduled under your loan agreement.

**Outstanding Balance and Payment** both refer to the protected amount under the Plan and include principal, interest, the Plan fee and any amounts which the creditor and borrower agreed to finance as part of the loan at the time the credit is extended. It does not include late fees or other fees; real estate taxes or property insurance premiums; or any amount that represents defaults in scheduled payments of either interest or principal. A scheduled lump-sum Balloon payment will only be protected if the Protected Event cancels the Outstanding Balance. Additionally, any advance taken during any period of Involuntary Unemployment or Disability will not be protected and the payment for that advance will not be cancelled. You will be responsible for re-paying any amounts that are not cancelled.

**Pre-existing condition:** means a condition for which you received or had medical treatment, advice or diagnostic tests either for that same condition or a related condition within the six-month period immediately prior to the Effective Date and immediately prior to each and every advance taken. However, any Protected Event resulting from any such condition or a related condition will not be excluded if the Protected Event commences six months or more after the Effective Date of protection or six months or more after the advance is taken.

### TERMS OF PROTECTION

**Who is eligible for protection?**
This Plan protects an eligible Borrower ("Borrower 1") against Protected Events that occur while you are enrolled in the Plan ("Single Protection"). At an additional cost, you may purchase protection for a Co-Borrower ("Borrower 2") against the Protected Events within the Plan purchased ("Joint Protection"). Co-signers, guarantors, and non-borrower owners of collateral are not eligible for protection.

**What types of loans are eligible for protection under the Plan?**
The following types of loans are eligible for protection if the Plan is made available to you on that loan type: closed-end consumer loans; consumer lines of credit; credit cards; and home equity lines of credit.

**When can I purchase protection?**
For eligible closed-end loans, the Plan can be purchased within 180 days of the loan origination date. For eligible open-end loans, the Plan may be purchased within 180 days of opening the loan, at the time of an advance, or within 180 days of an advance.

**What is the Plan Fee and how is it collected?**
The Plan Fee is the amount you pay for the Protection. It is calculated by applying the rate per $1,000 of your monthly outstanding balance and will be charged and collected monthly. For closed-end loans, if the Protection is purchased at loan closing, the fee becomes part of your required monthly loan payment. For open-end loans, the fee will be added to your outstanding balance as an advance each month which must be paid in full each month. If Debt Protection is added after the start of a closed-end loan, the fee will be added to your outstanding balance each month; in such a case, we may either increase your minimum monthly payment or extend the term of your loan. If you fail to pay the fee, we can cancel the protection.

**Can the Plan Fee and terms of this Agreement Change?**
Yes. We can change the terms of this Agreement, including the rates, at any time. If we do so, you will be provided prior notice and an opportunity to cancel your Agreement under the Plan.

**Can this Agreement be contested?**
Yes. If an event occurs within the first 2 years of this Plan, and if we find that you did not meet the eligibility requirements at the time of your application, your protection under the Plan will be removed, you will receive a refund of fees paid, and an otherwise valid claim will be denied.

### PROTECTED EVENTS
The following describes the types of Protected Events and the protection afforded under each Plan:

**DEATH** *(Plans 1, 2, and 4; Joint Protection Available)*
**What is the Death benefit?**
For each protected borrower, we will cancel the amount of your Outstanding Balance as of the date of death, up to $75,000. If two protected Borrowers die simultaneously, we will cancel the Outstanding Balance, up to $75,000. In no event will an excess of $75,000 be cancelled.

**DISABILITY** *(Plans 1-3; Joint Protection Available)*
**What does Disability mean and how do I qualify for Disability?**
Disability means your continuous inability, due to sickness or injury, to perform the substantial and material duties of your regular occupation and you are under the regular care and treatment of a licensed physician or licensed health care provider. To qualify for Disability protection, you must be disabled for 14 consecutive days. Benefits begin to accrue on the first (1st) day that you are disabled.

**What amounts are cancelled under the Disability protection?**
For each occurrence of Disability, we will cancel 1/30th of the Payment for each day that you are disabled beginning with the first (1st) day of Disability and continuing for up to twelve (12) Payment cancellations. However, cancellations will immediately cease if you recover or return to work; or if the loan is paid off, is refinanced, or is discharged for any reason. Cancellation is limited to a total of $15,000 over the term of the loan, regardless of the number of occurrences. The maximum monthly cancellation is $1,000.

**What if the same or related disability occurs?**
*Please see the "What if I suffer a recurrence?" question in the General Provisions section below.*

| BORROWER'S NAME | LOAN NUMBER | ACCOUNT NUMBER | DATE OF LOAN |
|---|---|---|---|
| NATASHA Q DEYO | 1378516 | XXX41278 | 12/1/2017 |

**INVOLUNTARY UNEMPLOYMENT** *(Plans 1 and 3; Joint Protection Available)*
**What does Involuntary Unemployment mean and how do I qualify for protection?**
Involuntary Unemployment means that you involuntarily lost your employment in which you were actively working for income for twenty-four (24) hours or more per week, and are receiving, unemployment benefits.
To qualify for Involuntary Unemployment protection, the following requirements must be met:

1. You are involuntarily unemployed for 30 consecutive days; and
2. You are receiving unemployment benefits for the period of unemployment for which you are making a claim under this Agreement.

**What amounts are cancelled under Involuntary Unemployment protection?**
We will cancel 1/30th of the Payment for each day you are involuntarily unemployed, beginning with the first (1st) day of involuntary unemployment and continuing for (a) up to six (6) Payment cancellations per occurrence of Involuntary Unemployment; or (b) until you discontinue receiving unemployment benefits for any reason; or (c) you regain employment; whichever is earlier. Cancellation is limited to a total of $15,000 over the term of the loan, regardless of the number of occurrences. The maximum monthly cancellation is $1,000.

## EXCLUSIONS
*Exclusions apply to both the Outstanding Balance and any and all advances under a line of credit.*
**Benefits will not be provided under any Protected Event if the Protected Event:**
(1) is due to suicide committed within the first 2 years of protection; (2) is due to an intentionally self-inflicted injury; (3) is due to a Pre- existing Condition; (4) results from war or any act of war, whether declared or undeclared; (5) occurs on or after your 70th birthday; (6) results from the same occurrence for which you have already received maximum benefits under this Agreement. Benefits will also not be provided under one Protected Event if you are currently receiving benefits under another Protected Event.
The following exclusions apply in addition to the above:
**Benefits will not be provided under Disability protection if:**
(1) the disability is related to a normal pregnancy, normal childbirth, or elective abortions. Complications due to pregnancy or childbirth will only be protected if the complications themselves are the cause of the disability.
**Benefits will not be provided under Involuntary Unemployment protection if:**
(1) your job is terminated because: (a) you retire; (b) you quit or resign your employment for any reason; (c) you lose your employment due to (i) willful or criminal misconduct; (ii) a normal, routine or seasonal shut-down; (iii) discharge from active military service; (iv) disability caused by sickness or injury; or (v) a strike, lockout, or labor dispute; (2) the involuntary unemployment commences within 90 days after your Effective Date; or (3) you received unemployment benefits within 2 years prior to applying for the Plan.

## GENERAL PROVISIONS
**How do I obtain benefits and verify a Protected Event under the Plan?**
To obtain benefits under the Plan, you must notify us of a Protected Event as soon as possible after the occurrence of the Protected Event, and provide any documentation or information required by us at the time of your claim and/or throughout the period for which Payments are being cancelled. You must be able to verify the Protected Event to our satisfaction. If your delay in filing a claim prevents us in any way from determining eligibility under the Plan, no benefit will be issued.
**What if I sustain an unrelated injury or sickness while I am disabled?**
If you are disabled ("original occurrence") and sustain an additional sickness or injury which would be in and of itself disabling, the additional sickness or injury will not be considered a new occurrence of Disability, but rather will be considered the same occurrence. This means that you will receive benefits only if you did not exhaust your maximum per-occurrence benefits in connection with the original occurrence.
**What if I suffer a recurrence of the same or related Protected Event?**
If you incur a claim for the same type of Protected Event again within six (6) months after you have recovered or returned to full-time work, we will consider this a continuation of the prior event. (For disability, however, this only applies if you are disabled due to the same condition.) This means that the maximum number of cancellations per occurrence for the prior event will still apply; if that maximum was already reached, no benefits will be issued. If you incur a claim for the same type of Protected Event again more than six (6) months after you have recovered or returned to full-time work, we will consider this a new event and the terms and conditions of the Plan apply as if no prior event occurred. This provision applies whether you return to work full-time with the same or different employer.
**What is the status of my loan following the occurrence of a Protected Event?**
During the time it takes to process your request for benefits, you are responsible for making your monthly payment by the due date. Once benefits begin, you are responsible for any difference between the minimum payment due on the loan and the amount that is cancelled.
**What if the term of my loan ends while I am receiving cancellations under the Plan?**
Regardless of the number of cancellations you may otherwise be entitled to, cancellations will cease if the loan is paid off, refinanced, sold or transferred, or discharged for any reason.
**How can the Plan be terminated?**
You may terminate this Agreement at any time by writing us at Northwest Federal Credit Union, 200 Spring Street, Herndon, VA 20170. If you do so within thirty (30) days of your enrollment in the Plan, we will credit your loan account for any fees charged for this protection. We can terminate this Agreement by giving you written notice at least thirty (30) days in advance of the termination. Termination by us or you will be effective on the first of the month following termination. Fees for the month in which notice of termination is received will still be due and collected from the loan payment.
Your Plan participation will terminate without advance notice if (1) your loan is paid off, refinanced, sold or transferred, or discharged for any reason; (2) required loan payments are past due by 90 days or more; if you bring your loan current after your Protection has been terminated for delinquency, protection will not be reinstated automatically and you must reapply for the Plan. (3) you fail to pay the Plan Fee; (4) when you reach age 70 or die. For Joint Protection, when the oldest borrower reaches age 70, the oldest borrower's protection terminates. Protection will automatically convert to Single Protection for the younger borrower and the monthly fee will be adjusted accordingly. Once the younger borrower reaches age 70, all protection will terminate. If either borrower dies, any death benefits available will be paid, subject to the terms of this Agreement, and the protection for that borrower will terminate; or (5) the protected Outstanding Balance is paid off under the terms of the Plan or all maximum cancellations are reached.
**What are the tax implications?**
You may be subject to federal, state and local taxes on the amount of your cancelled loan payment or balance. You should consult your tax advisor. We or the Plan Administrator do not provide you with guidance on the tax implications, if any, of a cancelled debt.
**What if I have questions about the Plan?**
Telephone us at 703-709-8921 or write to us at Northwest Federal Credit Union, 200 Spring Street, Herndon, VA 20170, if you have any questions regarding this Plan.

FIRST CLASS MAIL

NORTHWEST FEDERAL CREDIT UNION
200 Spring Street
Herndon, VA 20170

Hasler
US POSTAGE $001.60

U.S. Bankruptcy Court
701 East Broad Street
Richmond, VA 23219